UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES ARMSTRONG III** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-4027** |
| **OFFSHORE SPECIALTY FABRICATORS ET AL.** | **SECTION: "H"(2)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is Plaintiff's claim for maintenance and cure. Plaintiff Charles Armstrong III alleges that he was injured while employed by Defendant Offshore Specialty Fabricators ("OSF") as a crewmember aboard the D/B WILLIAM KALLOP. Plaintiff has brought claims for unseaworthiness, Jones Act negligence, maintenance and cure, and spoliation of evidence. On September 10, 2016, Plaintiff moved this Court to hold a hearing on his maintenance and cure claim, which this Court granted. A hearing was held on January 13, 2017. Plaintiff seeks a finding that he is entitled to an increase in maintenance, cure for his shoulder and neck injury, and damages for Defendant's arbitrary and capricious failure to pay. Having considered the evidence admitted at the hearing and the arguments of counsel,

this Court makes the following findings of fact and conclusions of law on Plaintiff's maintenance and cure claim. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## FINDINGS OF FACT

1. At all material times, Armstrong was a seaman and a member of the crew of the D/B WILLIAM KALLOP.
2. At all material times, Armstrong was employed by OSF as a mechanic.
3. In late April or early May of 2015, Armstrong injured his wrist while refueling a generator using a fuel hose aboard the D/B WILLIAM KALLOP when the fuel hose "caught a kink" and twisted around in his hands.
4. At some time after the injury, Armstrong visited the medics on the vessel for anti-inflammatories.
5. Armstrong initially believed the injury was a minor strain or pull.
6. There were no witnesses to the accident or resulting injury.
7. Armstrong completed the remainder of his hitch despite the alleged injury.
8. No accident report was completed regarding the injury and Armstrong signed a release stating that he had not been injured aboard the vessel prior to finishing his hitch.
9. On or about May 20, Armstrong reinjured his wrist when he attempted to throw a bag of his belongings off of his personal boat as he was preparing to leave for his next hitch with OSF.

10. Prior to the re-injury, Armstrong had not seen a doctor and was preparing to return to work for his next hitch.

11. On May 21, Armstrong visited an urgent care facility complaining of wrist pain. The doctor indicated that Armstrong stated that he had a history of pain in his wrist "but today moved bag and pain came back." There is no indication that Plaintiff complained of pain in his neck or shoulder during this visit. The doctor gave Armstrong a steroid injection and recommended pain medication and a wrist splint.

12. On May 21, an x-ray was performed of Plaintiff's left wrist, which did not reveal any abnormal findings.

13. Immediately thereafter, Armstrong contacted OSF and informed them that he would not make his next hitch.

14. Armstrong returned for a follow-up with the urgent care doctor on May 27, and he recommended that he continue to avoid heavy lifting.

15. Armstrong thereafter contacted OSF and informed them that he needed an additional week off. He informed a crew change coordinator about the incident on the vessel, as well as the re-injury to his wrist that occurred when throwing his bag. There is no indication that he complained of any pain in his shoulder or neck at this time.

16. In light of Armstrong's failure to fill out an accident report after the incident on the vessel or report his injury to OSF until about three weeks later, OSF initially refused to pay maintenance and cure. However, OSF eventually agreed to pay maintenance and cure relating to Armstrong's wrist injury.

17. On June 15, 2015 and on the recommendation of his attorney, Armstrong saw Dr. William Batherson at Spine Care of Metairie where he first reported experiencing pain in his left forearm, shoulder, and neck. He also reported tingling in the fingers of both hands.

18. Dr. Batherson's initial impression was of a wrist sprain, and he recommended physical therapy and that Armstrong continue to refrain from working.

19. Eventually an MRI of Plaintiff's wrist, shoulder, and neck were performed. The MRI of his left shoulder indicated a labral tear. His wrist MRI was suggestive of carpal tunnel.

20. Armstrong was referred to a hand specialist, Dr. Eric George, who recommended a nerve study and performed two injections in the hand.

21. Dr. George diagnosed carpal tunnel syndrome, and Armstrong had a carpal tunnel release surgery on his wrist. He was released from treatment by Dr. George one to two months after the surgery. However, Armstrong reported still having trouble with his wrist at the time of the hearing.

22. Armstrong visited Dr. Felix Savoie regarding his shoulder pain. Dr. Savoie indicated that he believes the shoulder injury was related to the May 6 accident on the vessel. However, there is no indication that Dr. Savoie was informed of the later re-injuring incident.

23. Dr. Savoie has recommended surgery on Armstrong's shoulder.

24. Armstrong was referred to Dr. Rand Voorhies for evaluation of his neck pain. Dr. Voorhies compared a pre-employment cervical MRI taken in July 2014 with a cervical MRI after the accident and noted no changes. However, both MRIs showed a disc osteophyte complex at C5-6, which had been asymptomatic prior to the alleged injury. Dr. Voorhies opined that much of Armstrong's neck pain is emanating from his shoulder.

25. Armstrong has also been seeing Dr. Mark Skellie for psychological issues related to the accident.

26. Defendants have agreed to pay Plaintiff's cure relating to his wrist injury, including the surgery already performed, and have paid maintenance in the amount of $30/day.

27. Armstrong's lodging expenses are $210.00/month for a slip rental for his house boat and $180.54 in utilities.

28. In August 2016, Armstrong spent $528.71 on groceries.

29. Accordingly, Armstrong requires approximately $29.65 per day for food and lodging.

30. At the hearing, this Court granted Defendant's Motion for Judgment on Partial Findings as to the Plaintiff's neck injury, finding that there was no evidence linking Plaintiff's neck injury to the incident on the vessel.

31. This Court now also holds that, based on the findings of fact, Plaintiff did not sustain an injury to his shoulder aboard the vessel. The evidence indicates that Plaintiff did not complain of shoulder pain until after the re-injury and that he characterized the injury on the

vessel as minor, necessitating neither leaving his hitch early nor skipping his next hitch.

## **CONCLUSIONS OF LAW**

1. A seaman who becomes sick or injured during his service to the ship is entitled to maintenance and cure. *Cooper v. Diamond M Co.*, 799 F.2d 176, 178–79 (5th Cir. 1986) (citations omitted).

2. "'Maintenance' encompasses a seaman's living expenses, while 'cure' covers payment of medical or therapeutic treatment." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) (citations omitted).

## **Maintenance**

3. "Maintenance is a per diem living allowance for food and lodging comparable to what the seaman is entitled to while at sea." *Weeks Marine, Inc. v. Watson*, 190 F. Supp. 3d 588, 596 (E.D. La. 2016).

4. "[S]eamen are entitled to maintenance in the amount of their actual expenses on food and lodging up to the reasonable amount for their locality." *Hall v. Noble Drilling (U.S.) Inc.,* 242 F.3d 582, 590 (5th Cir. 2001).

5. Plaintiff has argued that he is entitled to an increase in maintenance payments because his monthly expenses far exceed the $30.00/day that Defendant is currently paying. Plaintiff's calculations, however, include items other than the food and lodging intended to be covered by maintenance.

6. Plaintiff's food and lodging expenses amount to approximately $29.65/day. Defendant is currently paying $30.00/day. Other courts in this district have found that $30.00/day is a reasonable maintenance payment. *See Atl. Sounding Co. v. Curette,* No. 05-2810, 2006 WL 1560793, at *3 (E.D. La. May 16, 2006). Accordingly, Plaintiff is not entitled to an increase in maintenance payments.

**Cure**

7. Because this Court has found that Plaintiff did not sustain a shoulder or neck injury aboard the vessel, he is not entitled to additional cure.

**Failure to Pay**

8. "It is well-settled that '[a] shipowner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees.'" *Breese v. AWI, Inc.*, 823 F.2d 100, 103 (5th Cir. 1987) (quoting *Yelverton v. Mobile Laboratories, Inc.,* 782 F.2d 555, 558 (5th Cir. 1986)). Such an award should be based on some egregious conduct by the shipowner "exhibiting wanton and intentional disregard of a seaman's rights." *Id.* "Laxness in investigating a claim that would have been found to have merit has been found to meet the standard, as has a finding that the employer had 'no reasonable excuse' for its refusal." *Id.*

9. Defendant's refusal to pay maintenance and cure was not arbitrary or capricious in light of this Court's holdings. In addition, its delay in paying maintenance and cure for Plaintiff's wrist injury was justified

in light of Plaintiff's failure to report the accident or injury for several weeks.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's maintenance and cure claim is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 17th day of April, 2017.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**